# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IRONRIDGE GLOBAL IV, LTD. and IRONRIDGE GLOBAL PARTNERS, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| vs. | ) ) | NO. |
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiffs, Ironridge Global IV, Ltd. and Ironridge Global Partners, LLC, for their complaint against the Securities and Exchange Commission (the "SEC" or "Commission") respectfully allege as follows:

## PRELIMINARY STATEMENT

### 1.

Neither Plaintiff is registered before the SEC in any capacity. Nevertheless, the SEC has sued the Plaintiffs before the SEC's in-house administrative tribunal, alleging that they violated Sections 15(a) and 20(b) of the Securities Exchange Act of 1934 by supposedly operating as a broker-dealer without registering as one.

The SEC wins almost every case in that proceeding, which is tailor-made to favor the SEC.  Indeed, the prosecutor, judge, and the first panel to hear an appeal are all SEC insiders.  And the SEC's rules of procedure deprive those like Plaintiffs here of procedural safeguards such as depositions, the Federal Rules of Evidence's protections, and a jury trial.  As one federal judge recently remarked, "[o]ne might wonder:  from where does the constitutional warrant for such unchecked and unbalanced administrative power derive?"[1]

2.

That is just the beginning of the proceeding's defects.  The Administrative Law Judge presiding over Plaintiffs' case lacks the power to do so, for at least two reasons.  First, the ALJ is an inferior officer of the United States.  The Constitution therefore requires that such officers of the United States be appointed by the President, the head of the SEC, or the courts.  But the ALJ was appointed by none of those.  Second, the Constitution requires that the President have the power to remove the ALJ, but the ALJ has tenure protection that unduly obstructs this removal power.

---

[1] *S.E.C. v. Citigroup Global Markets Inc.*, 34 F. Supp. 3d 379, 381 (S.D.N.Y. 2014) (Rakoff, J.).

US2008 7291148

3.

In short, the proceeding is unconstitutional on several accounts:

- First, it abridges Plaintiffs' constitutional right to a jury trial.

- Second, the inferior officer overseeing that proceeding, the ALJ, is insulated from removal by two layers of good-cause tenure protection, thus impairing the President's ability to ensure that the laws are faithfully executed.

- Third, the ALJ was not appointed by the Commissioners who jointly are the head of the SEC.  This violates Article II, Section 2 of the Constitution, which vests the President, the courts, and the "heads of departments" the sole power to appoint "inferior officers" like ALJs.

4.

Declaratory and injunctive relief is thus necessary to prevent the SEC from subjecting Plaintiffs to an unconstitutional proceeding.  Indeed, without this Court's intervention, at least some of the issues will go unheard.  The same ALJ presiding over Plaintiffs' case has held in another matter that he "lack[s] the authority to address" challenges asserting a violation of the Seventh Amendment right to a jury trial.  *See* Declaration of Stephen E. Hudson ("Hudson Decl.") Ex. 2 at 10.  And though that ALJ did address a challenge to the ALJ removal structure,

US2008 7291148

he did so only after expressing "doubt that [he had] the authority to address this issue," yet still assuming "that [he] ha[d] authority to do so." *See id.* at 5.

## JURISDICTION, VENUE, AND PARTIES

### 5.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651 and 2201 and 5 U.S.C. §§ 702 and 706.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).  Indeed, the SEC office suing Plaintiffs is located in Fulton County, Ga.

### 6.

Plaintiff Ironridge Global IV, Ltd. ("Global IV") is a British Virgin Islands business company, with its sole place of business in the British Virgin Islands.  Global IV engages in several investment activities in the normal course of its business, including  court-approved exchanges that are exempt from the Securities Act of 1933 under section 3(a)(10) thereof, as described below.

### 7.

Plaintiff Ironridge Global Partners, LLC ("Partners LLC") is a limited liability company.  At the operative time alleged by the SEC, Partners LLC had four directors, including an investment banker, two investment advisors, and a

US2008 7291148

licensed securities attorney with over two decades of experience in securities law compliance, securities transactions and securities litigation.

8.

The SEC is an agency of the United States government, headquartered in Washington, D.C.

9.

It is appropriate and necessary for this Court to exercise jurisdiction over Plaintiffs' claims because:  (a) absent this Court's review at this stage, meaningful judicial review will be foreclosed; (b) Plaintiffs' claims are wholly collateral to the review provisions of the securities laws; and (c) Plaintiffs' claims fall outside the scope of the SEC's expertise.  *See Free Enter. Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 489-90 (2010).

10.

Absent this Court's intervention, Plaintiffs' constitutional challenges will escape meaningful judicial review.  A Court of Appeals cannot enjoin the Commission from an instituted administrative proceeding that has already run its course.  And even if a Court of Appeals were to ultimately vacate on constitutional grounds an adverse final Commission decision against Plaintiffs, it would be too late to unwind the harm that will have already befallen Plaintiffs in being

compelled to participate in the very proceeding that they claimed from the beginning was unconstitutional.

11.

The constitutional claims brought by Plaintiffs invoke core federal questions over which a federal district court possesses original jurisdiction under 28 U.S.C. § 1331.  These challenges have nothing to do with the merits of the allegations pending against Plaintiffs in the agency action.  They are thus "wholly collateral" to the administrative proceeding.

12.

Plaintiffs' constitutional challenges also fall outside the domain of the SEC's expertise.  These claims do not implicate the federal securities laws.  Instead, they attack the existence and features of the administrative proceeding.

## **BACKGROUND**

13.

When the Securities Act was first enacted in 1933 and amended in 1934, certain securities were entirely exempted from its purview.  One of those is any security that is "issued in exchange for one or more bona fide outstanding securities, claims or property interests," when the "terms and conditions of such issuance and exchange are approved[] after a hearing upon the fairness of such

terms and conditions . . . by any court . . . ." 15 U.S.C. § 77c(a)(10).  Such a court-approved exempt exchange is often referred to as a "Section 3(a)(10) exchange."

14.

Global IV engages in court-approved Section 3(a)(10) exchanges in the course of its business.

15.

On October 30, 2013, the SEC began an investigation of Partners LLC, including for possible violation of Section 5 of the Securities Act.

16.

On July 23, 2014, the SEC Staff notified Partners LLC (not Global IV) that the SEC Staff had preliminarily decided to recommend that the Commission institute an administrative enforcement action against Partners LLC.

17.

The Staff asserted that Partners LLC was liable for violating Section 5 and under Exchange Act Section 15(a), which prohibits a "broker or dealer" from "effect[ing] any transaction in, or [] induc[ing] or attempt[ing] to induce the purchase or sale of, any security" unless the "broker or dealer" is "registered." 15 U.S.C. § 78o(a)(1).  The staff asserted that Partners LLC was acting as a "broker or dealer" in connection with the Section 3(a)(10) exchanges and yet was

US2008 7291148

unregistered.  On January 5, 2015, the Staff asserted that Partners LLC was liable for Global IV's conduct under Exchange Act Section 20(a).  On January 6, 2015, the Staff notified Global IV that the SEC Staff had preliminarily decided to recommend that the Commission institute an administrative enforcement action against Global IV for violations of Section 5 of the Securities Act and Section 15(a) of the Exchange Act.

18.

To support the contention that Plaintiffs are "broker[s] or dealer[s]," the Staff relied on a novel interpretation of that phrase without support in the law or the SEC's regulations, and contrary to the SEC's own guidance.  The Staff is attempting to expand the definition of that phrase through litigation, rather than the typical rulemaking process.

19.

On June 23, 2015, the Commission accepted the Staff's recommendation and issued an Order Instituting Administrative and Cease-and-Desist Proceedings against Plaintiffs, alleging violations of Exchange Act Sections 15(a) and 20(b). The order does not allege any fraud or investor harm, and does not assert any violation of Section 5.  The SEC is seeking a cease-and-desist order, disgorgement, and civil penalties. The case was assigned to SEC ALJ James Grimes, who has not

-8-

been appointed by the heads of the SEC, the President, or the Courts.  *See* Hudson

Declaration Ex. 3 at 2.

## THE ADMINISTRATIVE PROCEEDING

### 20.

That order swept Plaintiffs into an administrative proceeding riddled with

Constitutional defects.

### 21.

Before the passage of the Dodd-Frank Wall Street Reform and Consumer

Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (the "Dodd-Frank

Act"), the SEC could bring an action against unregulated persons like Plaintiffs for

civil penalties only in a federal district court, where Plaintiffs would hold a

Seventh Amendment right to a jury trial.

### 22.

But under Section 929P(a) of the Dodd-Frank Act, the SEC now has

unguided authority to bring such civil-penalty actions in an administrative

Commission proceeding.  This unfettered decision-making authority has been the

centerpiece of the SEC's recent enforcement strategy.

US2008 7291148

23.

Following a string of recent losses in federal jury trials, Andrew Ceresney, the Director of the SEC's Division of Enforcement, announced that the SEC planned to bring more of its cases in its own administrative courts.[2]  The SEC's motivation for depriving individuals of their right to a jury trial in federal district court and instead hailing them before its own judges is clear.

For one thing, threatening individuals with an administrative proceeding has compelled settlements.  Mr. Ceresney has himself stated that "there have been a number of cases in recent months where we have threatened administrative proceedings, it was something we told the other we were going to do and they settled."[3]

24.

The SEC also enjoys a pronounced home-court advantage.  According to a recent Wall Street Journal analysis, the SEC has "won against 90% of defendants before its own judges in contested cases from October 2010 through March of this year."[4]  In stark contrast, it has only garnered a 69% success rate in cases litigated

---

[2] Hudson Decl.  Ex. 5.

[3] Hudson Decl.  Ex. 6.

[4] Hudson Decl. Ex. 7.

-10-

US2008 7291148

in federal court over the same period.[5]  U.S. District Judge, Jed Rakoff, remarked that in fiscal year 2014 alone, the SEC won 100% of its administrative enforcement actions, while its success rate in federal court reached only 61%.[6]

25.

This advantage also extends to appeals of ALJ decisions, which are heard by the SEC's Commissioners.  The same Wall Street Journal analysis found that, from January 2010 through this past March, the Commissioners found for the SEC in 53 out of 56 appeals (or 95%).[7]  These results are hardly surprising.  Bradley Bondi, a former counsel to two former Commissioners, recently stated that "[i]n an administrative law proceeding[,] the commission is akin to the prosecutor and then, in an appeal, the judge in the same case."[8]

26.

Besides this high success rate, the administrative process may also be set up with the deck stacked against parties like Global IV and Partners LLC.  One former SEC ALJ, Lillian McEwen, recently told the Wall Street Journal that she believed

---

[5] *Id.*

[6] Hudson Decl. Ex. 8;  Ex. 9.

[7] Hudson Decl. Ex. 7.

[8] Hudson Decl. Ex. 7.

US2008 7291148

the administrative review process was at times slanted against defendants.[9]  She stated that she retired because her "loyalty to the SEC" was questioned by the agency's Chief Administrative Law Judge after finding in favor of defendants in too many cases.[10]  Ms. McEwen added that the expectation was for SEC judges to work under the assumption that "the burden was on the people who were accused to show that they didn't do what the agency said they did."[11]

27.

Fairness concerns even emanate from the SEC's attorneys and Commissioners themselves.  The General Counsel of the Commission, Anne K. Small, specifically acknowledged in a public forum last summer that the current administrative proceeding rules are inadequately tailored to address the complexities raised by an insider trading case.[12]  In a question and answer session between Small and members of the District of Columbia Bar, Small stated to ensure that "the process is fair and reasonable," it was "entirely reasonable to wonder" if the administrative proceeding rules should be updated to adequately

---

[9] Hudson Decl. Ex. 7.

[10] *Id.*

[11] *Id.*

[12] Hudson Decl. Ex. 10.

US2008 7291148

address the increasing number of insider trading and other complex cases being brought within the Commission.[13]

28.

More recently, a current Commissioner acknowledged that the SEC's "enforcement program could also benefit from a look through the lens of fairness."[14]  Indeed, to "avoid the perception that the Commission is taking its tougher cases to its in-house judges, and to ensure that all are treated fairly and equally," the Commissioner called for the SEC to establish guidelines to determine which enforcement actions should be brought in an administrative forum and which actions should be brought in federal court.[15]   Yet, instead of providing the "consistent set of guidelines" advocated by this Commissioner, the recently published "Approach to Forum Selection in Contested Actions" from the SEC's Division of Enforcement[16] "shed[s] little light on how the decision will be made."[17]

---

[13] *Id.*

[14] Hudson Decl. Ex. 9.

[15] *Id.*

[16] Hudson Decl. Ex. 11.

[17] Hudson Decl. Ex. 12.

-13-

29.

One consideration contained in the Division of Enforcement's guidance suggests that the SEC desires to exert more control over the development of complex legal questions.  Indeed, when a case is "likely to raise unsettled and complex" issues, the guidance states that "consideration should be given to . . . obtaining a Commission decision on such issues, subject to appellate review in the federal courts [to] facilitate development of the law."[18]  Before this guidance was issued, a former SEC Commissioner told the Wall Street Journal that, in "bringing more cases in its own backyard, the agency is not only increasing its chances of winning but giving itself greater control over the future evolution of legal doctrine."[19]

30.

The target of this chorus of criticism and concern – the SEC administrative proceeding – lacks the constitutional and procedural safeguards available in a federal district court action.

---

[18] *See* Hudson Decl. Ex. 11 at 3.

[19] Hudson Decl. Ex. 7.

US2008 7291148

31.

An administrative proceeding happens within the SEC's confines.  It is prosecuted by SEC attorneys, governed by the SEC's Rules of Practice ("Rules of Practice"), and is adjudicated by an SEC ALJ, who serves as the finder of fact and law.

32.

Unlike a civil action in federal district court, a respondent in an administrative proceeding has no right to a trial by jury.

33.

The Federal Rules of Civil Procedure are not applicable in an administrative proceeding.

34.

The Federal Rules of Evidence also are not applicable in an administrative proceeding.  Instead, any evidence that "can conceivably throw any light upon the controversy," including hearsay, "normally" will be admitted in an administrative proceeding.  *In the Matter of Jay Alan Ochanpaugh*, Release No. 54363 (Aug. 25, 2006), 88 S.E.C. Docket 2510, 2006 WL 2482466, at *6 n.29.

US2008 7291148

35.

The discovery allowed in an administrative proceeding is far more limited than in federal court.  Indeed, respondents are generally barred from taking depositions under Rules of Practice 233 and 234.  Partners LLC and Global IV are thus prohibited from taking the equivalent of a Rule 30(b)(6) deposition of the SEC.  Also, Respondents may obtain documents only through the issuance of a subpoena under Rule of Practice 232.

36.

Administrative proceedings run on a much faster timetable than civil cases in federal court.  Under Rule of Practice 360, an evidentiary hearing must occur, at most, approximately four months after the SEC issues an OIP.  The SEC even has the discretion to require that the hearing occur as early as one month after the OIP's issuance.  And the SEC need not begin making available the limited discovery afforded to respondents in an administrative proceeding until seven days after the OIP's issuance.  At bottom, although the SEC enjoyed the benefit of having over a year and a half to conduct its investigation of this complex case, Plaintiffs are required to digest the investigative file and prepare for trial in mere months.

US2008 7291148

37.

Although a defendant in a federal civil action may assert counterclaims, the Rules of Practice bar a respondent from doing so in an administrative proceeding.

38.

Nor do the Rules of Practice allow a respondent to file the equivalent of a Rule 12 motion to dismiss to test the legal sufficiency of the allegations underlying the SEC's administrative complaint.

39.

An appeal from the SEC ALJ's decision is heard by the SEC itself – the very body that approved the administrative enforcement action in the first place.  The Commission has the authority to hear or decline an appeal and to even impose greater sanctions than those ordered by the ALJ.  Only after it becomes effective may a Commission's final order be appealed to a United States Court of Appeals.  By that point, the unconstitutional administrative proceeding will have ended and will have irreparably harmed a respondent.

US2008 7291148

**THE CONFERRAL OF UNLIMITED AUTHORITY TO THE SEC TO
BRING ADMINISTRATIVE CIVIL PENALTY PROCEEDINGS
<u>VIOLATES THE SEVENTH AMENDMENT OF THE CONSTITUTION</u>**

40.

The Seventh Amendment states that "[i]n suits at common law, where the

value in controversy shall exceed twenty dollars, the right of trial by jury shall be

preserved . . . ." U.S. Const., amend. VII.

41.

The Supreme Court has "consistently interpreted the phrase 'suits at

common law' to refer to suits in which *legal* rights were to be ascertained and

determined, in contradistinction to those where equitable rights alone were

recognized, and equitable remedies were administered." *Granfinanciera, S.A. v.

Nordberg*, 492 U.S. 33, 41 (1989) (internal quotation marks and citations omitted).

The Seventh Amendment also extends to "actions brought to enforce statutory

rights that are analogous to common-law causes of action ordinarily decided in

English law courts in the late 18th century, as opposed to those customarily heard

by courts of equity or admiralty." *Id.* at 42.

42.

An administrative civil penalty enforcement action is analogous to the 18th

century common law cause of action in debt, "and federal courts have rightly

US2008 7291148

assumed that the Seventh Amendment required a jury trial."  *Tull v. United States*, 481 U.S. 412, 420 (1987).

43.

Civil penalties intended to punish culpable individuals, like those sought by the SEC here, is a type of "remedy at common law that could only be enforced in courts of law."  The Seventh Amendment thus attaches to this type of proceeding. *Tull*, 481 U.S. at 422-23.

44.

Even if this enforcement action involved a public right created by Congress, *see Atlas Roofing Co. v. Occupational Safety and Health Comm'n*, 430 U.S. 442, 452 (1977), until 2010 Congress had exclusively assigned the adjudication of such rights to an Article III court, in which a jury trial right attached.

45.

When enacted in 2010, the Dodd-Frank Act did not *create a new* public right.  Indeed, it created neither a new cause of action nor remedies therefor.  *See Granfinanciera, S.A.*, 492 U.S. at 60.  Instead, the Dodd-Frank Act simply authorized the Commission to institute a preexisting type of government enforcement action for civil penalties that was once the exclusive province of an Article III court in an administrative forum as well.

-19-

US2008 7291148

46.

Thus, without creating any new public rights, Congress has eliminated the exclusivity of the judicial forum where civil penalty enforcement actions against unregulated persons like Plaintiffs were adjudicated subject to constitutional safeguards, such as the Seventh Amendment right to a jury trial.  The Dodd-Frank Act now places an unregulated individual's once guaranteed right to a jury trial in the Commissions' unguided hands.  Yet, a party's Seventh Amendment right cannot be altered in this fashion.  *Cf. Granfinanciera, S.A.*, 492 U.S. at 60-61.

47.

Because the Dodd-Frank Act did not create a new public right, Congress contravened the Seventh Amendment when it authorized the Commission to bring civil penalty enforcement actions against unregulated individuals in an administrative forum.

**THE ADMINISTRATIVE PROCEEDING VIOLATES ARTICLE II BECAUSE THE PRESIDING ALJ IS PROTECTED FROM REMOVAL BY TWO LAYERS OF GOOD-CAUSE TENURE PROTECTION**

48.

Article II of the Constitution vests the executive power in the President, who must "take Care that the Laws be faithfully executed."  U.S. Const. art. II § 1, cl. 1; *id.* § 3.  In discharging this duty, the Constitution authorizes the President to rely

-20-

on the assistance of executive officers.  *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) ("*Free Enterprise*").

49.

SEC ALJs are inferior executive officers because they are appointees who exercise "significant authority pursuant to the laws of the United States." *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 881 (1991).  Indeed, an SEC ALJ's duties, salary, and means of appointment are all set forth by statute. The Exchange Act and SEC regulations similarly set forth an ALJ's broad authority to conduct administrative proceedings instituted by the Commission. Instead of performing mere ministerial tasks, SEC ALJs "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders."  *Freytag*, 501 U.S. at 881-82.

50.

SEC ALJs are also shielded from removal by two layers of good-cause tenure protection.  First, an SEC ALJ may be removed by the Commission only upon a finding of good cause by the Merit Systems Protection Board ("MSPB").[20] 5 U.S.C. § 7521(a)-(b).  Second, SEC Commissioners and members of the MSPB

---

[20] An MSPB decision to remove an ALJ is subject to judicial review.  5 U.S.C. § 7703.

-21-

can be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Free Enterprise*, 561 U.S. at 487; 5 U.S.C. § 1202(d). This multi-layer good-cause protection is analogous to the tenure structure that was held to violate Article II in *Free Enterprise*.  Indeed, like its counterpart in *Free Enterprise*, this removal scheme impairs the President's ability to ensure that the laws are faithfully executed.  *Free Enterprise*, 561 U.S. at 498.

51.

Because the dual-layer removal scheme prevents the President from exercising any oversight over SEC ALJs, it unduly infringes the constitutional separation of powers.

**THE ADMINISTRATIVE PROCEEDING VIOLATES ARTICLE II BECAUSE ALJS ARE NOT APPOINTED BY THE PRESIDENT, THE COURTS, OR THE HEAD OF THE DEPARTMENT**

52.

The Constitution's Article II, Section 2 states that only the following have authority to appoint "inferior officers" like ALJs:  the President, the courts of law, or the "heads of departments."  Art. II, § 2, cl. 2.

53.

The SEC is a "Department" under Article II, and its Commissioners are the Department "heads."  *Free Enterprise*, 561 U.S. at 511-13.

US2008 7291148

54.

Despite their crucial role and extensive powers as inferior officers, the SEC ALJs are not appointed by the President, the Courts, or the Commissioners. Instead, they are hired by the SEC's Office of Administrative Law Judges, with input from the Chief Administrative Law Judge, human resource functions, and the Office of Personnel Management.  In some cases, other federal agencies have simply transferred ALJs to the SEC.  The Commissioners themselves are not involved in appointing ALJs.  Thus the appointment of ALJs like the one presiding over Plaintiffs' administrative proceeding is unconstitutional.

55.

The government admits that the ALJ presiding over Plaintiffs' case "was not appointed by the SEC Commissioners."[21]

56.

Likewise, a Department of Justice attorney recently admitted that another SEC ALJ had not been appointed by the Commissioners and that the ALJ's appointment was likely unconstitutional if the ALJ was an "inferior officer" for purposes of Article II, Section 2.[22]

---

[21] Hudson Decl. Ex. 3 at 2.

[22] *See* Hudson Declaration Ex. 13 at 25-26, 29.

US2008 7291148

57.

Because the ALJ presiding over Plaintiffs' administrative proceeding was appointed in violation of Article II, the proceeding is unconstitutional.

## ABSENT THIS COURT'S INTERVENTION, PLAINTIFFS WILL SUFFER SEVERE AND IRREPARABLE HARM

58.

Absent this Court's intervention, Plaintiffs' constitutional claims will likely be unheard at the outset of the administrative proceeding.  More to the point, Plaintiffs will be further subjected to the very proceeding that they contend is unconstitutional.  The lack of traditional procedural safeguards in the administrative proceeding only exacerbates that harm.

59.

 Should Plaintiffs lose in the administrative proceeding, the damage would be severe and irreversible.  By the time Plaintiffs could seek review in a Court of Appeals of a final adverse Commission decision, it will be too late to unwind the substantial expense, burden, and reputational harm that they will have already suffered in being compelled to participate in the administrative proceeding.  Any sanctions imposed could also damage Plaintiffs well before they could obtain judicial review of their constitutional challenges.

-24-

60.

Furthermore, Plaintiffs' participation in this unconstitutional proceeding cannot be redressed through legal relief because the Commission is shielded from a suit for money damages by sovereign immunity doctrines.  Under Eleventh Circuit precedent, irreparable harm exists when a plaintiff has no monetary recourse on account of sovereign immunity.  Even if money damages were available, the reputational harm Plaintiffs would suffer from any SEC-impose administrative sanctions would be impossible to monetize.

61.

The threatened injury to Plaintiffs outweighs any harm the Commission may suffer as a result of the temporary halting of the civil penalty administrative enforcement proceeding.  The SEC has already spent over a year and a half investigating Plaintiffs for alleged securities violations.  Thus, the SEC cannot reasonably contend that it will be harmed by a pause in the administrative proceeding pending resolution of Plaintiffs' constitutional claims.  Indeed, any harm befalling the SEC would be nebulous and could be immediately remedied through the commencement of a proceeding against Plaintiffs in federal court.

US2008 7291148

## COUNT ONE
## <u>APPLICATION FOR INJUNCTIVE RELIEF</u>

62.

Plaintiffs re-allege and incorporate the foregoing paragraphs, as if fully set forth herein.

63.

Plaintiffs' constitutional rights will be irreparably harmed if a permanent injunction (and, if necessary, a preliminary injunction) are not issued against the SEC's administrative proceeding.  Plaintiffs have a substantial likelihood of success on the merits of their claims.  Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs, absent injunctive relief, far outweighs any harm to the SEC should the requested relief be granted.  Finally, issuing an injunction will serve the public interest in ensuring that administrative enforcement schemes operate within constitutional boundaries.

## COUNT TWO
## <u>DECLARATORY JUDGEMENT</u>

64.

Plaintiffs re-allege and incorporate the foregoing paragraphs, as if fully set forth herein.

US2008 7291148

65.

Plaintiffs respectfully request a declaratory judgment that:  (i) the statutory provisions authorizing the SEC to bring administrative civil penalty enforcement actions against unregulated individuals are unconstitutional under the Seventh Amendment; (ii) the statutory and regulatory provisions providing for the position and tenure protections of SEC ALJs are unconstitutional; and (iii) the appointments of SEC ALJs, including the ALJ presiding over Plaintiffs' administrative proceeding, are unconstitutional.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

(a)     An order and judgment declaring that the statutory provisions authorizing the SEC to bring administrative civil penalty enforcement actions against unregulated individuals violates the Seventh Amendment;

(b)     An order and judgment declaring unconstitutional the statutory and regulatory provisions providing for the position and tenure protection of the SEC ALJ and the proceedings over which they preside;

(c)     An order and judgment declaring unconstitutional the statutory and regulatory provisions and practices for the appointment of SEC ALJs and the proceedings over which they preside.

-27-

US2008 7291148

(d)     An order and judgment enjoining the Commission from pursuing an administrative proceeding against Plaintiffs; and

(e)     Such other and further relief as this Court may deem just and proper, including reasonable attorney's fees and the costs of this action.

Respectfully submitted, July 14, 2015.


KILPATRICK TOWNSEND &
    STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
shudson@kilpatricktownsend.com
hrightler@kilpatricktownsend.com
adesai@kilpatricktownsend.com
jchess@kilpatricktownsend.com

___s/   Stephen E. Hudson_____
Stephen E. Hudson
Georgia Bar No. 374692
Hillary D. Rightler
Georgia Bar No. 572475
Akash R. Desai
Georgia Bar No. 338124
Josh C. Hess
Georgia Bar No. 371139

Attorneys for Plaintiffs

US2008 7291148