# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IRONRIDGE GLOBAL IV, LTD. and IRONRIDGE GLOBAL PARTNERS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| vs. | ) ) | NO. |
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR A PRELIMINARY INJUNCTION

KILPATRICK TOWNSEND &
    STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
shudson@kilpatricktownsend.com
hrightler@kilpatricktownsend.com
adesai@kilpatricktownsend.com

Stephen E. Hudson
Georgia Bar No. 374692
Hillary D. Rightler
Georgia Bar No. 572475
Akash R. Desai
Georgia Bar No. 338124
Josh C. Hess
Georgia Bar No. 371139

Attorneys for Plaintiffs

US2008 7298059 3

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ....................................................1

II.    ARGUMENT...............................................................................3

     A.     This Court Possesses Subject Matter Jurisdiction................................3

     B.     Plaintiffs Are Likely to Succeed on the Merits....................................9

          1.     SEC ALJs are Inferior Officers....................................9

               a.     SEC ALJs Share the Same Duties and
                       Discretion as the Special Trial Judges That
                       Were Held to Be Inferior Officers in *Freytag*...............10

               b.     The D.C. Circuit's Decision in *Landry* Does
                       Not Alter the Conclusion That SEC ALJs Are
                       Inferior Officers...........................................16

               c.     By the DOJ's Own Standards, SEC ALJs Are
                       Officers Rather Than Employees ...................................19

               d.     SEC ALJs Are Not Appointed
                       Constitutionally. ...........................................20

     C.     There Is a Substantial Likelihood That Plaintiffs Will Suffer
         Irreparable Harm if This Motion Is Denied. .......................................22

     D.     The Remaining Preliminary Injunction Factors Weigh in
         Favor of Granting the Motion. ..........................................24

III.   CONCLUSION...........................................................................25

US2008 7298059 3

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).............................................................3

*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986)..........................3

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................... 2, 15

*Bunn v. Illinois*, 45 Ill. 397 (1867).........................................................................20

*C&A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848
    (S.D.N.Y. 1991).....................................................................................22

*Califano v. Sanders*, 430 U.S. 99 (1977) .................................................................3

*Cunningham v. Adams*, 808 F.2d 815 (11th Cir. 1987).........................................24

*Dep't of Transp. v. Assoc. of Am. R.R.'s*, 135 S. Ct. 1225 (2015)..........................17

*Duka v. SEC.*, No. 15 Civ. 357(RMB)(SN), 2015 WL 1943245
    (S.D.N.Y. Apr. 15, 2015) ............................................................... 8, 14, 23

*Edmond v. United States*, 520 U.S. 651 (1997) ............................................. 14, 15

*Elk Run Coal Co., Inc. v. U.S. Dep't of Labor*, 804 F. Supp. 2d 8
    (D.D.C. 2011) ...........................................................................................6

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.* 561 U.S. 477
    (2010).............................................................................................. passim

*Freytag v. Comm'r Internal Revenue Serv.*, 501 U.S. 868 (1991)................... passim

*Gen. Elec. Co. v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) ............................................7

*Gupta v. SEC*, 796 F. Supp. 2d 503 (S.D.N.Y. 2011) ...............................................7

*In re Clawson*, Release No. 48143, 2003 WL 21539920 (July 9, 2003)..................13

*In re Pelosi*, Release No. 3805, 2014 WL 1247415 (Mar. 27, 2014) .....................13

*In re Urban*, Release No. 63456, 2010 WL 5092728 (Dec. 7, 2010) .....................13

US2008 7298059 3

*Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125 (D.C. Cir. 2000) ............... 10, 17

*Le v. SEC*, 542 F. Supp. 2d 1318 (N.D. Ga. 2008) ................................................. 23

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ........................................................ 6

*Nat'l Park Conservation Ass'n v. Norton*, 324 F.3d 1229 (11th Cir. 2003) ........................................................................................................ 7

*Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F.Supp. 631 (D.D.C. 1993) ........................................................................... 25

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268 (11th Cir. 2013) .............................................................................. 23, 24

*Reno v. Caholic Social Servs.*, 509 U.S. 43 (1993) ............................................. 6

*Ryder v. United States*, 515 U.S. 177 (1995) ................................................. 14, 21

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ............................................... 3

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ..................................... 5

*Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979) ................................... 8

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ........................................................ 16

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) .................................................................................. 22

*United States v. Lane*, 64 M.J. 1 (C.A.AF. 2006) .............................................. 21

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1998) ..................... 23

*Weiss v. United States*, 510 U.S. 163 (1994) ..................................................... 14

*Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 468 F.3d 1306 (11th Cir. 2006), *on reh'g en banc in part*, 500 F.3d 1293 (11th Cir. 2007) ........................................................................................................ 23

## **Statutes**

5 U.S.C. § 3105 ................................................................................................ 11

5 U.S.C. § 5372 ..................................................................................................11

5 U.S.C. § 556 ....................................................................................................11

5 U.S.C. § 557(b) .............................................................................. 11, 13, 18, 20

15 U.S.C. § 78aa ..................................................................................................5

15 U.S.C. § 78bb(f)(2) ..........................................................................................6

15 U.S.C. § 78d-1 ...............................................................................................15

15 U.S.C. § 78d-1(a) ...........................................................................................11

15 U.S.C. § 78d-1(c) ...........................................................................................13

15 U.S.C. § 78dd-2(d) ..........................................................................................5

15 U.S.C. § 78dd-3(d) ..........................................................................................5

15 U.S.C. § 78u(d) ................................................................................................5

15 U.S.C. § 78u-1 .................................................................................................5

15 U.S.C. § 78u-3 .................................................................................................5

15 U.S.C. § 78u-3(d) .............................................................................................6

15 U.S.C. § 78u-6(h)(B) ........................................................................................6

15 U.S.C. § 78v ...................................................................................................16

15 U.S.C. § 78y ....................................................................................................4

15 U.S.C. § 78y(c)(3) ............................................................................................5

26 U.S.C. §§ 7443A(b) and (c) ...........................................................................12

28 U.S.C. § 1331 ..................................................................................................4

US2008 7298059 3

## Other Authorities

Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND
   PROCEDURE (3d ed.)......................................................22

Kent Barnett, *Resolving the ALJ Quandry*, 66 Vand. L. Rev. 797
   (2013) ...................................................... 9, 14

*Sec. of Ed. Review of Admin. Law Judge Decisions*, 15 U.S. Op. Off.
   Legal Counsel 8, 1991 WL 499882 (Jan. 31, 1991).....................18

U.S. Dep't of Justice, Office of Legal Counsel, *Memorandum for
   Attorneys of the Office Re: Best Practices for OLC Legal
   Advice and Written Opinions* (July 16, 2010) ...................... 18, 19

## Rules

5 C.F.R. § 930.204 ...........................................................11

5 C.F.R. § 930.204(a)........................................................20

12 C.F.R. § 308.38(a)........................................................18

17 C.F.R. § 200.10 ..........................................................16

17 C.F.R. § 200.14 ................................................... 11, 12, 20

17 C.F.R. § 200.14(a)(8)....................................................18

17 C.F.R. § 200.30-10.......................................................11

17 C.F.R. § 200.30-9........................................................11

17 C.F.R. § 201.101(a)(5)...................................................16

17 C.F.R. § 201.110 ........................................................16

17 C.F.R. § 201.111 ........................................................12

17 C.F.R. § 201.180 ........................................................12

17 C.F.R. § 201.360(b) .....................................................18

17 C.F.R. § 201.360(d)(2)..................................................................13

17 C.F.R. § 201.360(d)(2)..................................................................18

17 C.F.R. § 201.411 ........................................................................13

S.E.C. Rule of Practice 180(a) ........................................................20

S.E.C. Rule of Practice 250(b)........................................................20

S.E.C. Rule of Practice 360(d)(2) ..................................................23

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ...........................................................9

Plaintiffs, Ironridge Global IV, Ltd., ("Global IV") and Ironridge Global Partners, LLC ("Partners, LLC"), respectfully submit this Memorandum of Law in support of their motion to preliminarily enjoin the United States Securities and Exchange Commission ("SEC" or "Commission") from prosecuting the administrative proceeding brought against them, captioned *In the Matter of Ironridge Global Partners, LLC, Ironridge Global IV, Ltd.*, Administrative Proceeding File No. 3-16649 (June 23, 2015), during the pendency of this action.

## I.   PRELIMINARY STATEMENT

On June 23, 2015, the SEC sued Plaintiffs in the SEC's in-house tribunal, alleging that they supposedly operated as a dealer by engaging in exempt court-approved exchanges under the Securities Act of 1933 without complying with the Securities Exchange Act of 1934's registration requirements for broker-dealers. The Court should preliminarily enjoin that proceeding for several reasons.

*First*, Plaintiffs have a meritorious defense that the ALJs who preside over such proceedings do so unconstitutionally: The ALJs' positions are established by law and they perform more than ministerial tasks, so they are "inferior officers" under the Constitution's Article II.  Indeed, even by the government's own standards, provided in an Office of Legal Counsel memorandum, SEC ALJs are inferior officers.  Yet the Commission concedes that they were never appointed by

any of the persons or entities that the Constitution gives exclusive authority to appoint inferior officers: the President, the Courts, or the department head, which is the Commission here.  *See generally Buckley v. Valeo*, 424 U.S. 1, 132 (1976); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.* 561 U.S. 477, 512-13 (2010) (the SEC is a "department" and the Commissioners are its "head").

*Second*, Plaintiffs will suffer irreparable injuries without an injunction.  To begin, Plaintiffs would be subjected to an unconstitutional proceeding – the pendency of which causes immense damage to Plaintiffs' business and reputation. And if the ALJ or Commission issues a final adverse decision against Plaintiffs, a Court of Appeals will be powerless to provide the requested relief:  It will be too late to unwind the harm that will have already befallen Plaintiffs in being compelled to participate in the unconstitutional proceeding.  Plaintiffs also cannot redress their constitutional injury through money damages, because the SEC has sovereign immunity.

*Third*, the SEC will suffer no harm from an order enjoining it from continuing the administrative proceeding until a properly-appointed officer is designated to preside over that proceeding.  Indeed, the SEC could resume its case against Plaintiffs immediately by, for example, simply filing the suit in federal court.

-2-

*Finally*, the public interest will be served by granting the requested relief because this Court would ensure that the SEC's administrative enforcement scheme operates within constitutional boundaries.  Plaintiffs therefore respectfully request that the Court grant their motion for a preliminary injunction.

## II.    ARGUMENT

Preliminary injunctive relief is warranted if "(1) [the movant] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  Plaintiffs meet each of these elements and are thus entitled to preliminary injunctive relief.

### A.    This Court Possesses Subject Matter Jurisdiction.

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claim:  Courts presume that they have jurisdiction to review agency action.  *See Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670, 673 (1986); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 141 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should

-3-

courts restrict access to judicial review" (citation and quotation marks omitted)). And the presumption is well founded here, because Plaintiffs' constitutional claim invokes a core federal question over which this Court possesses original jurisdiction under 28 U.S.C. § 1331.

In similar circumstances, the SEC has nonetheless argued that district courts lack jurisdiction because 15 U.S.C. § 78y gives Courts of Appeal jurisdiction to review a "final order" of the Commission. But as the Supreme Court held in *Free Enterprise*, § 78y does not create an "exclusive route to review." 561 U.S. at 489; *see also* Order on Motion for Temporary Restraining Order at 13, *Hill v. SEC*, No. 15-1801 (N.D. Ga. June 6, 2015) [ECF No. 28] ("*Hill* Op."), attached as Hudson Decl. Ex. 1, (finding subject matter jurisdiction in these circumstances partly because in *Free Enterprise* the Supreme Court held that § 78y does not limit the jurisdiction of district courts explicitly or implicitly). Indeed, the "text [of § 78y] does not expressly limit the jurisdiction that other statutes confer on district courts," such as § 1331. *Free Enterprise*, 561 U.S. at 489. "Nor does [§ 78y] do so implicitly," because the statute does not display a "'fairly discernable' intent to limit jurisdiction." *Id.*

To the contrary, the "statutory scheme" as a whole demonstrates an intent to grant district courts jurisdiction. *Free Enterprise*, 561 U.S at 489; *see Thunder*

US2008 7298059 3

*Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (stating that "[w]hether a statute is intended to preclude initial judicial review is determined from" considering a variety of factors, including the statute's language and structure). The statute repeatedly grants, rather than shrinks, district courts' jurisdiction.  For instance, district courts are broadly granted exclusive jurisdiction "of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."  15 U.S.C. § 78aa.  The Act also grants a district court forum to the Commission when it brings civil enforcement actions.  *See* 15 U.S.C. § 78u(d), § 78u-1, § 78u-3.[1]  What's more, the agency review provision at issue here authorizes a district court to take exclusive jurisdiction over a final Commission order issued at the end of an administrative proceeding under certain circumstances. *See* 15 U.S.C. § 78y(c)(3).

Besides granting a district court forum to the Commission, the Exchange Act also grants a district court with jurisdiction to address applications from respondents in cease-and-desist proceedings to set aside, limit, or suspend

---

[1] The Exchange Act also confers district court jurisdiction over certain enforcement actions brought by the Attorney General.  *See* 15 U.S.C. §§ 78dd-2(d), 78dd-3(d).

temporary cease-and-desist orders.  15 U.S.C. § 78u-3(d).[2]  Congress thus did not draft the Exchange Act's text with an eye towards limiting district-court jurisdiction.

In addition to the statute's structure, other factors also demonstrate that the Court may "presume that Congress [did] not intend to limit jurisdiction" of the sort of claim here, *Free Enterprise*, 561 U.S. at 489.

*First*, this "broad, systemic constitutional challenge[]" to how SEC ALJs are appointed is collateral to the merits of the particular allegations pending against Plaintiffs in their administrative proceeding.  *Elk Run Coal Co., Inc. v. U.S. Dep't of Labor*, 804 F. Supp. 2d 8, 16, 22 (D.D.C. 2011) (holding that an administrative-review statute did not deprive district courts of jurisdiction over a Due Process challenge to the "administrative review process . . . *as a whole*" (emphasis in original)); *Matthews v. Eldridge*, 424 U.S. 319, 327-332 (1976) (constitutional challenge to an agency's administrative process could be brought directly in federal court); *see Reno v. Caholic Social Servs.*, 509 U.S. 43, 56 (1993) (statute limiting review of a "determination" in a particular administrative proceeding does not withdraw jurisdiction over challenges to a "practice or procedure" or a "group

---

[2] The Exchange Act also grants a district court with jurisdiction over an action brought by a whistleblower alleging unlawful retaliation, 15 U.S.C. § 78u-6(h)(B), and over certain securities class actions removed from a State court.  15 U.S.C. § 78bb(f)(2).

-6-

of decisions"); *see generally Free Enterprise*, 561 U.S. at 489-90.  Through the

Article II challenge, Plaintiffs "object to the" proceeding's very "existence, not"

the merits of the SEC's charges.  *Free Enterprise*, 561 U.S. at 490.  So

"Plaintiff[s'] claims rise or fall regardless of what has occurred or will occur in the

SEC administrative proceeding" or the merits of the charges against them.  *Hill*

Op. at 17; *Gupta v.* SEC, 796 F. Supp. 2d 503, 514 (S.D.N.Y. 2011) (Rakoff, J.)

(in similar circumstances, holding that the district court had jurisdiction over an

Equal Protection claim that did "not have anything to do with" the merits of the

charges in the administrative proceeding); *cf. Gen. Elec. Co. v. EPA*, 360 F.3d 188,

191, 192, 194 (D.C. Cir. 2004) (per curiam) (holding that a statute governing

review of administrative action did not divest district courts of jurisdiction to hear

"systemic" Due Process challenges to an "administrative orders regime"); *Nat'l*

*Park Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) (courts

have jurisdiction over constitutional challenge to non-final agency action).

   *Second*, if Plaintiffs must await the Commission's final order before seeking

review, they will be unable to obtain *meaningful* judicial review before the Court

of Appeals.  *See generally Free Enterprise*, 561 U.S. at 489-90.  A Court of

Appeals cannot enjoin the Commission from instituting an administrative

proceeding that has already run its course.  *Hill* Op. at 15; *see also Duka v. SEC.*,

No. 15 Civ. 357(RMB)(SN), 2015 WL 1943245, at *5 (S.D.N.Y. Apr. 15, 2015) (finding subject matter jurisdiction over a facial constitutional challenge to an SEC administrative proceeding after applying the three-factor test cited in *Free Enterprise*).  Even if the Court of Appeals later vacates an adverse final Commission decision on constitutional grounds, it will be too late to unwind the substantial expense, burden, and reputational harm that Plaintiffs will have already incurred in participating in the very proceeding that they contend is unconstitutional. *Duka*,  2015 WL 1943245, at *5; *see also Touche Ross & Co. v. SEC*, 609 F.2d 570, 577 (2d Cir. 1979) (holding that a litigant need not exhaust administrative remedies if doing so would require him "to submit to the very procedures which they are attacking").  Were Plaintiffs thus compelled to await the conclusion of the administrative proceeding before seeking judicial intervention, their claims for injunctive and declaratory relief would be moot because the constitutional harm will have already occurred.  *Duka*, 2015 WL 1943245, at *5.

*Third*, Plaintiff's Article II challenge necessarily falls outside the domain of the Commission's expertise.  *Hill* Op. at 21.  In *Free Enterprise*, the Supreme Court held that an Article II challenge analogous to the one raised here fell outside the SEC's competence and expertise.  561 U.S. at 491.  This Court should thus assert subject matter jurisdiction over Plaintiffs' constitutional claim.

-8-

**B.**     **Plaintiffs Are Likely to Succeed on the Merits.**

Not only does this Court have subject matter jurisdiction, but Plaintiffs are entitled to a preliminary injunction because all of the factors that this Court must consider tilt in favor of the requested relief.

First, Plaintiffs are likely to succeed on the merits.  The Appointments Clause provides that only three persons or entities have power to appoint "inferior Officers": the President, the Courts, or the heads of departments – here, the Commission.  U.S. Const. art. II, § 2, cl. 2.  SEC ALJs hold positions established by law and exercise more than ministerial powers, so they are "inferior officers." Yet SEC ALJs are not appointed by the President, Courts, or Commission. Plaintiffs therefore have a meritorious claim that the ALJs' appointments are unconstitutional and that the Appointments Clause invalidates the proceeding over which those ALJs preside.  *Hill* Op. at 35-42.

**1.**     **SEC ALJs are Inferior Officers.**

SEC ALJs are inferior officers, just as district-court clerks, Treasury and Interior Department clerks, an assistant surgeon, a cadet engineer, election monitors, federal marshals, military judges, the Transportation Department's general counsel, and Special Trial judges are inferior officers.  *Hill* Op. at 36 (citing Kent Barnett, *Resolving the ALJ Quandry*, 66 Vand. L. Rev. 797, 812 (2013)).  In fact, SEC ALJs

are similar in all relevant respects to the Special Trial Judges held by the Supreme

Court to be inferior officers in *Freytag*—as federal courts have recently held.  And

this conclusion is confirmed by the Supreme Court's treatment of other adjudicative

officers, the SEC's own description of the broad authority possessed by its ALJs,

and by the Exchange Act itself.  This is no technical defect:  It means that the

presiding ALJs are not accountable to their constitutionally-designated superiors and

that the SEC is thus undermining the Constitution's goals of curtailing abuses of

official appointments and ensuring that those who wield the appointment power are

"accountable to political force and the will of the people."  *Freytag v. Comm'r*

*Internal Revenue Serv.*, 501 U.S. 868, 884 (1991).

The D.C. Circuit's decision in *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d

1125, 1133-34 (D.C. Cir. 2000), upon which the SEC heavily relies, also poses no

bar to reaching this result because it rests on a fundamental misinterpretation of

*Freytag's* core holding and is, in any event, distinguishable.

> **a.      SEC ALJs Share the Same Duties and Discretion as the Special Trial Judges That Were Held to Be Inferior Officers in *Freytag*.**

In *Freytag*, the Supreme Court concluded that Special Trial Judges ("STJs")

appointed by the Chief Judge of the Tax Court were inferior officers under the

Appointments Clause.  501 U.S. at 881.  In so holding, the Court focused on:

US2008 7298059 3

(1) the fact that the office of the STJ was "'established by Law,' and the duties, salary, and means of appointment for that office [were] specified by statute"; and (2) that the STJs performed "more than ministerial tasks." *Id.* at 881-82.  SEC ALJs share these same characteristics and are thus inferior officers.

Like the STJ in *Freytag*, the office of administrative law judge is "established by Law."  An SEC ALJ's duties, salary, and means of appointment are all set forth by statute.[3]  The Securities Exchange Act of 1934 and Commission regulations similarly set forth an SEC ALJ's broad authority.[4]

---

[3] *See* 5 U.S.C. § 556 (setting forth powers and duties of ALJs presiding over administrative hearings), § 557(b) (providing that an administrative law judge shall, subject to agency rules to the contrary, "initially decide the case"), § 5372 (setting forth the salary of ALJs), § 3105 ("Each agency shall appoint as many administrative law judges as are necessary for the proceedings required to be conducted in accordance with sections 556 and 557 of this title").

Federal regulations further specify the means of an ALJ's appointment.  For instance, an agency may appoint its ALJs "only with prior approval of [the Office of Personnel Management ("OPM")], except when it makes its selection from the list of eligibles provided by OPM."  5 C.F.R. § 930.204.  Moreover, this regulation specifies that an ALJ receives a career appointment and is exempt from having to proceed through a probationary period.  *Id.*

[4] *See* Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78d-1(a) (providing that the SEC "shall have the authority to delegate . . . any of its functions to . . . an administrative law judge . . . including functions with respect to hearing . . . any . . . matter"); 17 C.F.R. § 200.14 (concerning the "Office of Administrative Law Judges" and setting forth an ALJ's powers in proceedings instituted by the Commission); 17 C.F.R. § 200.30-9 (describing the delegation of authority from the Commission to each ALJ ("hearing officer"), including the authority to make an initial decision in an administrative proceeding); 17 C.F.R. § 200.30-10 (describing the delegation of authority from the Commission to the

-11-

Both the STJs and SEC ALJs perform more than "ministerial tasks." *Freytag*, 501 U.S. at 881. Both "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders."[5] Indeed, that SEC ALJs are conferred with the authority to "regulate the course of a hearing," 17 C.F.R. § 200.14 shows that, similar to their STJ counterparts, SEC ALJs exercise "significant discretion" in "carrying out the[ir] important functions." *Freytag*, 501 U.S. at 882.

SEC ALJs are similar to STJs in another respect: both may render final decisions. In an alternative holding, the Supreme Court in *Freytag* noted that STJs were inferior officers because they could render decisions of the Tax Court in certain classes of cases, subject to whatever conditions and review the Tax Court may provide. *Freytag*, 501 U.S. at 882; 26 U.S.C. §§ 7443A(b) and (c). SEC ALJs may also render final decisions of the Commission under certain

---

Chief Administrative Law Judge); 17 C.F.R. § 201.111 (setting forth the authority of the hearing officer "to do all things necessary and appropriate to discharge his or her duties" and noting that "[n]o provision of these Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. § 556, 557").
[5] 501 U.S. at 881-82; 17 C.F.R. § 200.14; *see also* 17 C.F.R. § 201.111 (setting forth similar powers); 17 C.F.R. § 201.180 (authorizing SEC ALJs to impose sanctions for contemptuous conduct).

-12-

circumstances.[6]  And subject to certain exceptions that are inapplicable here, the SEC generally exercises significant discretion in determining whether to even review an ALJ's decision.  *See* 17 C.F.R. § 201.411.  When the Commission *does* review ALJ decisions, moreover, the Commission defers to the ALJs on certain matters.  *In re Clawson*, Release No. 48143, 2003 WL 21539920, at *2 (July 9, 2003) (stating that the Commission accepts the "fact finder's credibility finding, absent overwhelming evidence to the contrary"); *In re Pelosi*, Release No. 3805, 2014 WL 1247415, at *2 (Mar. 27, 2014) ("The Commission gives considerable weight to the credibility determination of a law judge since it is based on hearing the witness' testimony and observing their demeanor." (internal quotation marks omitted)); *In re Urban*, Release No. 63456, 2010 WL 5092728, at *2 (Dec. 7, 2010).

Although *Freytag* did not directly address whether ALJs constitute inferior officers, Justice Scalia stated in his concurrence that "they are all *executive*

---

[6] *See* 15 U.S.C. § 78d-1(c) (noting that if the Commission does not exercise its discretion to review a decision of the ALJ, "then the action of [the] . . . administrative law judge . . . shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission"); 17 C.F.R. § 201.360(d)(2) (noting that if a respondent in an Administrative Proceeding does not file a petition for review, and "if the Commission does not order review of a decision on its own initiative, the Commission will issue an order that the decision [of the ALJ] has become final"); 5 U.S.C. § 557(b) ("When the presiding employee makes an initial decision, that decision becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule.").

-13-

officers."  501 U.S. at 910 (Scalia, J., concurring in part and concurring in judgment, joined by O'Connor, Kennedy & Souter, JJ) (emphasis in original). Justice Breyer acknowledged the same in his dissent in *Free Enterprise*.  561 U.S. at 542 (Breyer, J., dissenting, joined by Stevens, Ginsburg & Sotomayor, JJ). These citations thus show that five current Supreme Court Justices have concluded that ALJs are inferior officers.  *See* Kent Barnett, *Resolving the ALJ Quandary*, 66 Vand. L. Rev. 797, 800 (2013).

And more recently, a federal court held that SEC ALJs are inferior officers and enjoined a proceeding over which such an ALJ presided.  *Hill* Op. at 33-34. Likewise, another federal court interpreted *Freytag* as "appear[ing] to support the conclusion that SEC ALJs are . . . inferior officers."  *Duka*, 2015 WL 1943245, at *8.

The Supreme Court has also treated other adjudicative officers as "Officers" under Article II in a series of cases involving the constitutional status of military tribunals.  *See Edmond v. United States*, 520 U.S. 651, 661-63 (1997) (determining whether military judges were principal or inferior officers under Article II); *Ryder v. United States*, 515 U.S. 177, 180 (1995) (recognizing lower court's decision that "appellate military judges are inferior officers"); *Weiss v. United States*, 510 U.S. 163, 169 (1994) ("The parties do not dispute that military judges, because of the

-14-

authority and responsibilities they possess, act as 'Officers' of the United States")

(citing *Freytag*, 501 U.S. 868, and *Buckley*, 424 U.S. at 126).[7]

In addition to these authorities, the SEC's own website paints a compelling

picture of the requisite more-than-"ministerial" authority exercised by its ALJs.

Indeed, far from being mere employees, "Administrative Law Judges are

independent judicial *officers* who . . . conduct public hearings . . . in a manner

similar to non-jury trials in the federal district courts[,] . . . issue subpoenas,

conduct prehearing conferences, issue defaults, . . . rule on motions and the

admissibility of evidence[,] . . . prepare[] an Initial Decision that includes factual

findings . . . [and] . . . legal conclusions, . . . order sanctions[,] . . . disgorgement of

ill-gotten gains, civil penalties, censures, and cease-and-desist orders against . . .

entities, as well as individuals[.]"[8]

Moreover, the Exchange Act itself lists administrative law judges separately

from employees.  *See* 15 U.S.C. § 78d-1 (noting that the SEC may delegate its

authority to, among others, "an administrative law judge, or an employee or

employee board").  If Congress had intended for administrative law judges to be

---

[7] Notably, in *Edmond*, the Court stated that "we think it evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  520 U.S. at 663.
[8] *See* United States Securities and Exchange Commission, Office of Administrative Law Judges, "About the Office," available at http://www.sec.gov/alj.

-15-

mere employees, there would be no need to separately identify each of them in this manner.  To interpret that language otherwise would render the term "administrative law judges" superfluous.  *See generally TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (declining to treat statutory terms as mere surplusage).

The Exchange Act also strictly limits who may preside over an SEC hearing to the Commission, "any member or members thereof, or any *officer or officers* of the Commission designated by it."  15 U.S.C. § 78v (emphasis added).[9]  In other words, Congress has specified that only an officer may take the place of the Commissioners in presiding over an SEC administrative hearing.[10]  It follows that an SEC ALJ (who presides over hearings) must thus be an inferior officer.

### b.   The D.C. Circuit's Decision in *Landry* Does Not Alter the Conclusion That SEC ALJs Are Inferior Officers.

Elsewhere, the SEC has seized on *Landry*, to argue the contrary.  204 F.3d at 1133-34.  There, the D.C. Circuit held that FDIC ALJs were not inferior officers. But the SEC's argument fails.[11]  In *Landry*, the majority opinion misinterpreted the

---

[9]  *See also* 17 C.F.R. § 200.10 (noting that "[t]he Commission is composed of five members").

[10]  Also, the SEC's Rules of Practice provide that "[a]ll proceedings shall be presided over by the Commission or, if the Commission so orders, by a *hearing officer*."  17 C.F.R. § 201.110 (emphasis added).  And under those rules, an administrative law judge is a "hearing officer."  17 C.F.R. § 201.101(a)(5).

[11]  The government itself recognized the limited holding of *Landry* when it opposed certiorari, noting that the "court of appeals did not purport to establish any

-16-

holding in *Freytag* as resting on the fact that an STJ could render a final decision of the Tax Court. 204 F.3d at 1134. After discussing *Freytag*'s consideration of an STJ's ability to render a final decision, Judge Randolph pointed out, in a concurring opinion, that the *Landry* majority failed to acknowledge that the Supreme Court clearly designated this as an alternate holding. 204 F.3d at 1142 (Randolph, J., concurring in part and concurring in judgment); *see also Dep't of Transp. v. Assoc. of Am. R.R.'s*, 135 S. Ct. 1225, 1239 (2015) (Alito, J., concurring) (noting that "[i]nferior officers can do many things, but nothing final should appear in the Federal Register unless a Presidential appointee has at least signed off on it," and that "[o]ne would think that anyone who has the unilateral authority to tip a final decision one way or the other cannot be an inferior officer").

Indeed, *Freytag* squarely rejected the rationale underlying the *Landry* decision: "The Commissioner reasons that special trial judges may be deemed employees . . . because they lack authority to enter a final decision. *But this argument ignores the significance of the duties and discretion that special trial judges possess.*" 501 U.S. at 881 (emphasis added).[12] What is more, even if

---

categorical rule that administrative law judges are employees rather than 'inferior Officers' for purposes of the Appointments Clause." Br. for Resp't in Opp'n, *Landry v. FDIC*, No. 99-1916, 2000 WL 34013905, at *7 (Aug. 28, 2000).

[12] The Department of Justice's Office of Legal Counsel ("OLC") has itself determined that the power of the Secretary of Education to review the decisions of

-17-

finality were a relevant consideration, unlike the FDIC ALJs in *Landry*, SEC ALJs may actually render the final decision of the Commission under certain circumstances – which is enough to make them inferior officers.[13]  *Cf.  Freytag*, 501 U.S. at 882 (a person is an inferior officer if he sometimes exercises the powers of an inferior officer and sometimes acts as a mere employee). SEC ALJs render "initial decisions" that, unlike recommended decisions, "become[] the decision of the agency without further proceedings" in some instances.  5 U.S.C. § 557(b); 17 C.F.R. § 200.14(a)(8).  *Landry* is thus not only unpersuasive, but it is also distinguishable.  SEC ALJs are thus inferior officers under Article II.

---

ALJs actually accords with the status of those ALJs being inferior officers under the Appointments Clause.  *See Sec. of Ed. Review of Admin. Law Judge Decisions*, 15 U.S. Op. Off. Legal Counsel 8, 1991 WL 499882, at *14 (Jan. 31, 1991).  And OLC's "core function, pursuant to the Attorney General's delegation, is to provide controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government."  U.S. Dep't of Justice, Office of Legal Counsel, *Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010) (emphasis added) (available at http://www.justice.gov/sites/default/files/olc/legacy/ 2010/08/26/olc-legal-advice-opinions.pdf).  This analysis thus applies equally to SEC ALJs and further shows that they are inferior officers.

[13] *Compare* 12 C.F.R. § 308.38(a) (providing that FDIC ALJs may render a "*recommended* decision, recommended findings of fact, recommended conclusions of law, and proposed order") (emphasis added) *with* 17 C.F.R. §§ 201.360(b), (d)(2) (stating that SEC ALJs render an "initial decision" that, under certain circumstances, shall "become *final*") (emphasis added); *see also* 5 U.S.C. § 557(b) ("When the presiding employee makes an initial decision, that decision becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule.")

US2008 7298059 3

### c.   By the DOJ's Own Standards, SEC ALJs Are Officers Rather Than Employees

Moreover, an opinion from the Department of Justice's Office of Legal Counsel – which binds the government – establishes a test for identifying Article II officers.  Hudson Decl. Ex. 4 ("OLC Memo"); *see also* U.S. Dep't of Justice, Office of Legal Counsel, *Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions* at 1 (July 16, 2010) (available at http://www.justice.gov/sites/default/files/olc/legacy/2010/08/26/olc-legal-advice-opinions.pdf) (stating that OLC's "core function, pursuant to the Attorney General's delegation, is to provide controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government.").  Under that test, a government agent is an Article II officer if she occupies a position that (1) "is invested by legal authority with a portion of the sovereign powers of the federal Government," and (2) is "continuing."  OLC Memo at 1.  By the Government's own standard, SEC ALJs are Article II officers.

*First*, a SEC ALJ occupies a position that has received delegated "power lawfully conferred by the Government to bind third parties, or the Government itself, for the public benefit."  OLC Memo at 12.  Indeed, SEC ALJs have been delegated power to, for example, administer oaths, issue subpoenas, rule on offers

-19-

of proof, examine witnesses, regulate the course of a hearing, hold prehearing

conferences, rule upon motions including motions for summary disposition,

impose contempt sanctions for conduct during "any proceeding, including any

conference," and prepare an "initial decision" in an adjudication—which, unlike a

"recommende[d]" decision, "becomes the decision of the agency without further

proceedings unless" there is an appeal or the agency reviews the decision on

motion.  17 C.F.R. 200.14; S.E.C. Rules of Practice 180(a), 250(b); 5 U.S.C.

§ 557(b).

  *Second*, a SEC ALJ occupies a position that is continuing.  Indeed, an ALJ

"receives a career appointment."  5 C.F.R. § 930.204(a); *see also* OLC Memo at 32

(noting that "an office exists where a position that possesses delegated sovereign

authority is permanent, meaning that it is not limited by time or by being of such a

nature that it will terminate 'by the very fact of performance'") (quoting *Bunn v.

Illinois*, 45 Ill. 397, 409 (1867)).  Thus, Plaintiffs are likely to succeed in showing

that SEC ALJs are inferior officers.

   **d. SEC ALJs Are Not Appointed Constitutionally.**

  That the SEC ALJs are inferior officers is the end of the matter here.  As the

SEC concedes, SEC ALJs are not appointed by any of the three entities with

exclusive constitutional power to appoint them: the Commission, the President, or

the Courts.  Hudson Decl. Exs. 3 at 2, 13 at 25-26, and 14 ("*Timbervest* Filing").

Rather, the Chief Administrative Law Judge and SEC's Office of Human

Resources hire ALJs from a list that the Office of Personnel Management Supplies.

*See Timbervest* Filing.   Those ALJs therefore lack the power to preside over the

administrative proceedings, and those proceedings are unconstitutional as a result.

*Freytag*, 501 U.S. at 879 ("The alleged defect in the appointment of the Special

Trial Judge goes to the validity of the Tax Court proceeding that is the basis for

this litigation."); *see also Ryder*, 515 U.S. at 188 (holding that appointments clause

violation involving two of three judges sitting on an intermediate military appellate

court panel entitled petitioner to a hearing before a properly appointed panel of that

court); *United States v. Lane*, 64 M.J. 1, 7 (C.A.AF. 2006) (concluding that the

unconstitutional assignment of a Member of Congress to serve as a judge on a

military court of appeals rendered the petitioner's proceeding before that court

invalid and void).

But the Court need not take Plaintiffs' word for it.  In a similar case, the

SEC itself admitted that parties like Plaintiffs will "succeed on the merits for the

Article II challenge" once the Court concludes that ALJs are inferior officers:

> MS. LIN: We acknowledge that, your Honor, if this Court
> were to find ALJ Foelk to be an inferior officer, that that
> would make it more likely that the plaintiffs can succeed on

US2008 7298059 3

the merits for the Article II challenge, at least with respect to
the appointments clause challenge.

Hudson Decl. Ex. 13 at 29.  Plaintiffs have thus shown a substantial likelihood of

success on the merits.

**C.      There Is a Substantial Likelihood That Plaintiffs Will Suffer
Irreparable Harm if This Motion Is Denied.**

Absent injunctive relief, Plaintiffs will be subjected to the very proceeding

that they claim is unconstitutional—which is itself an irreparable injury, especially

because the proceeding's pendency causes immense damages to Plaintiffs'

reputation and business.  *Hill* Op. at 42 (holding that subjecting a party to an

"unconstitutional administrative proceeding" causes irreparable harm in these

circumstances); *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d

693, 701 (7th Cir. 1982) (holding that "subjection to an unconstitutionally

constituted decisionmaker" is an "irreparable" injury even if the ultimate decision

is subject to "review . . . in the courts"); *see* Charles Alan Wright & Arthur R.

Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed.) ("When an alleged

deprivation of a constitutional right is involved . . . most courts hold that no further

showing of irreparable injury is necessary."); *C&A Carbone, Inc. v. Town of

Clarkstown*, 770 F. Supp. 848, 854 (S.D.N.Y. 1991) (violating a structural

US2008 7298059 3

provision of the Constitution like the Commerce Clause "unquestionably

constitutes irreparable injury").

Should Plaintiffs lose in the administrative proceeding, moreover, the

damage could be severe and irreversible.  By the time Plaintiffs were to seek

review of a final adverse Commission decision in a Court of Appeals, it will be too

late to unwind the substantial expense, burden, and immense reputational harm that

they will have already suffered in being compelled to participate in the

administrative proceeding.  *See Duka,* 2015 WL 1943245, at *5; *Valley v. Rapides*

*Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1998) (reputational injury resulting

from a "constitutionally infirm" proceeding was irreparable).  Any sanctions

imposed could also damage Plaintiffs well before they could obtain judicial review

of their constitutional challenges.  *See* S.E.C. Rule of Practice 360(d)(2).

These harms also cannot be redressed through legal relief because the SEC is

shielded from a suit for money damages by sovereign immunity doctrines.[14]

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th

Cir. 2013) ("In the context of preliminary injunctions, numerous courts have held

---

[14] *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 468 F.3d 1306, 1315 (11th Cir. 2006), *on reh'g en banc in part*, 500 F.3d 1293 (11th Cir. 2007) (noting that the "SEC . . . enjoys sovereign immunity from suit"); *Le v. SEC*, 542 F. Supp. 2d 1318, 1324 (N.D. Ga. 2008) (noting that "[a] plaintiff cannot bring a *Bivens* action against the federal agency that employs the agent").

that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable."); *see also id.* at 1287, 1288, 1289; *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (noting that an injury is irreparable if it cannot be undone through monetary remedies).   Plaintiffs have thus shown a substantial likelihood of irreparable harm.   *Hill* Op. at 42.

**D.      The Remaining Preliminary Injunction Factors Weigh in Favor of Granting the Motion.**

The threatened injury to Plaintiffs outweighs any harm the Commission may suffer from a temporary halting of the administrative proceeding.  The SEC has already spent over a year and a half investigating Plaintiffs for alleged securities violations and cannot reasonably contend that it will be harmed by a pause in the administrative proceeding pending resolution of Plaintiffs' claims.  And any harm befalling the SEC could be immediately remedied through, for example, the commencement of an action against Plaintiffs in federal court.  *Hill* Op. at 43. Even if the injunction caused some minimal interference with the SEC's ability to enforce the securities law, such a harm is "nebulous" and "ephemeral"— particularly because the SEC's enforcement is "very likely [] unconstitutional." *Odebrecht*, 715 F.3d at 1289-90 ("The only harm to the State is the more nebulous, not easily quantified harm of being prevented from enforcing one of its laws.").  A preliminary injunction would also serve the public interest in ensuring that

-24-

administrative enforcement schemes operate within constitutional boundaries. *See Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F.Supp. 631, 640 (D.D.C. 1993) (noting there is "an overriding [public] interest in assuring that the government remains within the limit of its constitutional authority").

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction enjoining the SEC from continuing the administrative proceeding.

Dated:   July 14, 2015.

|  |  |
|---|---|
| |    s/   Stephen E. Hudson    |
| KILPATRICK TOWNSEND &<br>   STOCKTON LLP | Stephen E. Hudson |
| 1100 Peachtree Street, Suite 2800 | Georgia Bar No. 374692 |
| Atlanta, Georgia 30309-4530 | Hillary D. Rightler |
| Telephone:  (404) 815-6500 | Georgia Bar No. 572475 |
| Facsimile:  (404) 815-6555 | Akash R. Desai |
| shudson@kilpatricktownsend.com | Georgia Bar No. 338124 |
| hrightler@kilpatricktownsend.com | Josh C. Hess |
| adesai@kilpatricktownsend.com | Georgia Bar No. 371139 |
| | |
| | Attorneys for Plaintiffs |

US2008 7298059 3

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify that the foregoing was prepared in Times New Roman font,

14 point type, in compliance with Local Rule 5.1(C).


| | |
|---|---|
| | ___s/___ Stephen E. Hudson_____ |
| KILPATRICK TOWNSEND & | Stephen E. Hudson |
|    STOCKTON LLP | Georgia Bar No. 374692 |
| 1100 Peachtree Street, Suite 2800 | |
| Atlanta, Georgia 30309-4530 | |
| Telephone:  (404) 815-6500 | |
| Facsimile:  (404) 815-6555 | |
| shudson@kilpatricktownsend.com | Counsel for Plaintiffs |